# In re The Reading Trust Company Mortgage Pool, Series "B".

*George B. Balmer*, for petitioner.

*Ralph C. Body*, for respondent.

MARX, P. J., July 9, 1940.—The Reading Trust Company, trustee of "Mortgage Pool Series B", filed its first account, tendered a proper fee for filing alone, and tendered a duplicate of the account, typewritten and permanently bound, available to and to be accepted by the clerk of the orphans' court as a recording of the account. The clerk declined the duplicate and demanded a proper recording fee in addition to the filing fee. The additional fee was paid and the trustee thereupon presented this petition, asking an order on the clerk of the orphans' court requiring acceptance of the duplicate and a return of the recording fee. A citation issued, the clerk of the orphans' court answered, testimony was taken, and the matter was heard on argument.

The account covers 106 typewritten pages. Eight pages are given to principal, 96 pages to income, and two pages to index and summary. It covers the period from the erection of the pool, June 1, 1926, to April 10, 1940. The principal transactions aggregate slightly more than $3,000,-000, and show a balance, unliquidated, of $295,971.07. Income transactions aggregated $539,174.97, all disbursed or distributed except a balance of $1,592.13. The

duplicate of the account, declined by the clerk, is neatly and permanently bound, 8½ by 13 inches in size. After adjudication the principal and income balances will be distributed to the accountant for further administration under the trust.

Petitioner rests its case on the decision of our court of common pleas in In re The Pennsylvania Trust Co., 39 D. & C. 470.

That case involved an interpretation of section 19 of the Act of April 25, 1850, P. L. 569, 17 PS §1919. The duties of the clerk of the orphans' court, in corresponding matters, are detailed in section 18 of the act. The requirements of the two sections are largely similar, section 18 requiring the clerk of the orphans' court "to place upon record, in a fair, legible hand, in a book or books to be provided for that purpose, all accounts of executors, administrators and guardians . . . omitting the testimony and documents accompanying the same . . .". It is noted that accounts of trustees were not included. That section was repealed by the Orphans' Court Act of June 7, 1917, P. L. 363, and was superseded by section 8 (b) 2 of that repealing act, 20 PS §2202. That required the clerk to ". . . place upon record, in a fair, legible hand, or in typewriting, in a book or books to be provided for that purpose, all accounts of executors . . . and trustees . . . omitting the testimony and documents accompanying the same . . .". The amendment of May 25, 1939, P. L. 198, 20 PS §2202, added to the last-quoted enactment, after the words "documents accompanying", the words "such accounts and reports, and those parts of such accounts and reports as the courts by general or special rule may prescribe . . ." The nineteenth section of the 1850 act remains unchanged.

It is apparent that inferences noted in the cited case are not deducible from the analogous section 18 of the 1850 act and the subsequent legislation. When the Orphans' Court Act of 1917, supra, became effective, the modern

methods of recording, which we now use, were already in general use. The act mentions "typewriting" as one method.

The economic depression prevailing through the past decade caused numerous bank, trust company and individual fiduciaries to fail, necessitating numerous and voluminous accounts. Recent legislation has at least invited triennial accounts by trustees. Having in mind the growing mass of details required to be recorded under existing laws, the legislature enacted the above-cited Act of May 25, 1939. In this account there are 96 pages of income receipts and disbursements. Every item is important and properly appears in the account. The purposes of the account will be preserved, however, if in recording numerous details are aggregated, specifications are curtailed and summaries alone are given. Under a proper order, mass recording can be avoided while essentials are retained. The trend and the present state of this legislation establishes the legislative intent that accounts shall still be copied in books provided for the purpose. If filing a duplicate account sufficed, the Act of 1939, supra, at least, would be without purpose.

With perhaps 1,000 accounts filed and to be recorded annually, it is easily understood what confusion would result if each accountant were to be permitted to file, with his account, a duplicate thereof, more or less permanently bound, varying in size, in quality of paper, some first, others carbon copies. The work of the orphans' court, in distinction from that of the court of common pleas, lies largely in accounting. Some accounts are "first and final", but many, trust accounts especially, carry through years and are links in the chain extending through the life of the estate. Permanence and uniformity of recording is essential and these objects can be attained only by recording in books provided for the purpose.

And now, July 9, 1940, the petition and citation are dismissed.